## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | |
| | ) | **No. 07-20067-002-CM** |
| | ) | |
| **RONALD LASLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On October 5, 2007, a jury convicted Ronald Lasley on counts one and two of the indictment—that is, (1) conspiring to distribute cocaine, to possess with the intent to distribute cocaine, and to manufacture, to distribute, and to possess with intent to distribute crack cocaine and (2) attempting to possess with the intent to distribute cocaine. The case is before the court on defendant's motion for new trial (Doc. 46).[1] Because defendant has not met his burden, defendant's motion is denied.

### I.      Summary of Arguments and Factual Background

Defendant argues that a new trial is needed because of prosecutorial misconduct. The asserted prosecutorial misconduct in this case consists of the government's attorney posing "constant and repeated leading questions" during direct examinations of witnesses, leading to "the government essentially [becoming] a witness." Defendant cites that during the trial, defense counsel repeatedly objected to these questions. The court sustained these objections and eventually provided the jury

---

[1] The court presumes that the title of the motion, "Motion for Extension of Time for Filing Pre-Trial Motions," is a typographical error.

with an explanation of the definition of a leading question and a clarification of when a leading question is appropriate. While "defendant maintains that the entire case presented by the government deprived [] defendant of a fair trial," defendant highlights the testimony of Raphael Hogan as an egregious example of what he believes was prosecutorial misconduct.

The government responds that "the evidence against [] defendant was overwhelming and no manner of questioning by the government would have undercut the jury's determination of the defendant's guilt." The government then lists a summary of the evidence against defendant, provides its impression of Mr. Hogan's testimony, and notes that the court provided an instruction to the jury that the statements of counsel are not evidence.

The court has reviewed the trial transcript. During the four-day trial, defense counsel objected to the prosecutor's use of leading questions at least twenty-one times. The court sustained each of these objections. Initially, these objections were addressed at side-bar conferences. On the first objection, the prosecutor acknowledged that she was leading the witness. The court noted that "as counsel's aware, [leading questions are] not allowed on direct examination . . . [i]f there are any further objections regarding that, it's sustained." Trial Tr. vol. 1, 74, Oct. 2, 2007.

After several more objections to leading questions and outside of the jury's presence, defense counsel offered a motion in limine requesting an order "that the government not lead their witnesses on direct . . . ." *Id.* at 149. In response, the court stated that it "would tend to agree with defendant's counsel that there is some concern that the jury, having heard the question, may [already] be influenced by solely the question and not necessarily the response." *Id.* at 150. The court then reminded counsel that such questions are improper under direct examination, but noted that it "ha[s] no doubt that there is no bad faith on behalf of the government's attorney in regards to

-2-

her line of questioning." *Id.* Although the motion in limine request was implicitly denied, the court concluded by clarifying the proper form of a question for the prosecutor, and warned that if the leading questions persisted, it would explain to the jury the definition of a leading question, the reason for their exclusion, and instructions on the proper form of a question.

The next day of trial, the number of sustained objections to leading questions exceeded the previous day's total. Eventually, the court provided the warned-of instruction to the jury. The court explained the definition of leading questions, when they are permitted during examinations, and what the proper form of a question would be. After that statement to the jury, the court sustained seven additional objections to leading questions on the second day of trial.

On the same day—and after the court's explanation to the jury—Mr. Hogan testified. The court sustained at least six objections to leading questions during Mr. Hogan's testimony. Regarding the incident identified by defendant's counsel as an example of the prosecutor's misconduct, the court notes that the transcript states that the prosecutor began by asking Mr. Hogan to identify which bundles of money were his in a photograph. During this inquiry, the prosecutor asked whether specific bundles of money were Mr. Hogan's by pointing and asking questions such as, "[t]hese stacks are yours, is that right?," "and this one over here?" Trial Tr. vol. 2, 376–77, Oct. 3, 2007. Although Mr. Hogan initially agreed with the prosecutor's indication of which bundles were his, he later clarified that, "It's kind of hard to really say . . . which was mine." *Id.* Mr. Hogan went on to clarify that despite his uncertainty over which bundles were his, he knew that at least $50,000 of the total money was his and that defendant provided approximately an additional $30,000.

## II.     Judgment Standard

In considering a motion for new trial, the court has broad discretion which will not be

disturbed on appeal absent plain abuse of that discretion.  *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987).  The standards for granting a new trial are not as strict as the standards for granting judgment of acquittal.  Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires."  Additionally, any error which would require reversal on appeal is a sufficient basis for granting a new trial.  *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (quotation and citation omitted).  But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).  The burden of proving that a new trial is warranted rests on the defendant.  *Walters*, 89 F. Supp. 2d at 1213 (citations omitted).

When a motion for new trial is based on allegations of prosecutorial misconduct, the court applies a two-part test to determine the merits of the claim.  *United States v. Cortez*, No. 06-8078, 2007 WL 3225373, at *4 (10th Cir. Oct. 26, 2007).  "First, [the court] determine[s] if the conduct was improper . Second, [the court] determine[s] if any improper conduct warrants [a new trial]."  *See United States v. Bishop*, 469 F.3d 896, 905–06 (10th Cir. 2006).  In the second step of the analysis, relevant factors are "'the curative acts of the [trial court], the extent of the misconduct, and the role of the misconduct within the case as a whole.'"  *Id.* at 906 (quoting *United States v. Gordon*, 173 F.3d 761, 769 (10th Cir. 1999)).

Regarding a prosecutor's inappropriate use of leading questions, the Tenth Circuit has noted that although the Federal Rule of Evidence 611(c) prohibits the use of leading questions on direct examination—with exceptions that are presently inapplicable—"[a]ppellate courts have shown 'an almost total unwillingness to reverse for [violating this rule].'"  *United States v. Tyler*, 42 F. App'x 186, 191 (10th Cir. 2002) (citing *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983)).

Because the trial court has broad discretion regarding the application of the rule against the use of leading questions, the trial court's response becomes a significant factor in the inquiry of whether defendant was denied a fair trial.  *Id.*

**III.    Analysis**

First, the court considers whether the prosecutor's conduct was improper.  The court sustained at least twenty-one objections to the prosecutor's questions.  The court provided the prosecutor with repeated clarifications, warnings, and a statement to the jury explaining the nature of leading questions.  Despite this, the prosecutor persisted in using leading questions.  At the least, the repeated inappropriate use of leading questions was a bad habit in need of a remedy.  For the purposes of the remainder of this analysis, the court will consider the prosecutor's actions to have been improper.

Second, the court considers whether this improper conduct warrants a new trial, focusing on the court's response, the extent of the questions, and their overall impact on the trial.  As mentioned, the court sustained at least twenty-one objections to leading questions.  The court also directly informed the jury of the definition of a leading question, when it is acceptable to use such questions, and what the proper form of a question would be.  Additionally, the court instructed the jury that statements and arguments of counsel are not evidence.  While the number of sustained objections and use of leading questions was frequent, they did not pervade or dominate the trial.  Moreover, defendant has not identified any point at which the prosecutor's question led a witness on a specific element of the charges against defendant.  Even during Mr. Hogan's testimony, which was the only example defendant cited, Mr. Hogan estimated the amount of money defendant provided without a leading prompt from the prosecutor.

The present scenario is similar to the facts of *United States v. Tyler*.  In that case, the Tenth

-5-

Circuit noted that despite eighteen objections to leading questions, which the Circuit court identified as "indicative of less-than-exemplary examination skills," the trial court sustained those objections, admonished the government, and explained to the jury that leading questions are improper. *Tyler*, 42 F. App'x at 193. These considerations undercut a conclusion that the prosecutor's use of leading questions violated defendant's right to a fair trial. *Id.* Here, this court also sustained the objections, admonished the government, and explained to the jury the nature of leading questions. Given these similarities, and the appellate court's reluctance to reverse for violations of the rule against leading questions, the court finds that the prosecutor's conduct does not warrant a new trial.

**IT IS THEREFORE ORDERED** that defendant's Motion for New Trial (Doc. 46) is denied.

Dated this 22nd day of January 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**